**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| YOLANDA PEART, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| STEIN MART INC. and | : | |
| TRAVELERS PROPERTY CASUALTY | : | |
| COMPANY OF AMERICA, | : | |
| | : | No. 09-7463 |
| Intervenor-Plaintiffs, | : | |
| v. | : | |
| | : | |
| DOREL JUVENILE GROUP, INC., | : | Judge Lemmon |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT**
**DOREL JUVENILE GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Yolanda Peart brought suit against Defendant Dorel Juvenile Group, Inc. ("Dorel") under the Louisiana Products Liability Act ("LPLA") for injuries she allegedly sustained while using a step stool manufactured by Dorel (the "Step Stool") at her place of employment, Stein Mart. Plaintiff's Petition alleges that the Step Stool was defective in design, manufacture, warnings and warranty.

However, discovery has revealed Plaintiff's claims to have no merit, for two primary reasons. First, Plaintiff's use of the stool was "unanticipated" within the meaning of the Louisiana Product Liability Act. It is undisputed that the labels on the step stool stated that it was intended solely "for light household use" and only for individuals weighing up to 200 pounds. Stein Mart, on the other hand, is a commercial store, and the Plaintiff weighed 250 pounds at the time she used and fell from the stool.

Second, Plaintiff has no evidence of any defect that rendered the Step Stool unreasonably dangerous. Plaintiff's own expert admits that the Step Stool's step simply wore out after several

years of heavy use in a commercial setting.  Plaintiff's expert was unable to support Plaintiff's claims of design defect, manufacturing defect, or breach of warranty.  The sole claim advanced by Plaintiff's expert — that the Step Stool should have had a warning to check it for degradation at the end of its useful life — is foreclosed by Plaintiff's admission that she did not read any of the labels on the stool before using it, did not inspect the stool before using it, and in any event, disregarded the clearest warning that *was* provided — that the Step Stool was intended for use by only by people weighing up to 200 pounds.

For these reasons, as further detailed below, there is no issue of material fact and Dorel is entitled to summary judgment on all of Plaintiff's claims.

## BACKGROUND

On October 17, 2008, Plaintiff was working at Stein Mart in Metairie, Louisiana, shelving purses in the stockroom before the store opened when she fell from the Step Stool and sustained injuries.  (Separate Statement of Undisputed Material Facts in Support of Defendant Dorel Juvenile Group Inc.'s Motion for Summary Judgment (cited hereinafter as "SUF") ¶ 1.)  Plaintiff claims that the bottom step broke under her foot and she fell to the ground, sustaining injuries to her left arm and shoulder.  (SUF ¶ 2.)  Plaintiff did not read the warnings on the stool or inspect the stool before she used it.  (SUF ¶¶ 17-18.)

The Step Stool that Plaintiff was using at the time of the accident was a two step, Cosco Model #11-302 folding step stool.  (SUF ¶ 3.)  The Step Stool contained a label on the front right leg that states in part, "Light Household Duty Rating, Working Load: 200 lbs."  (SUF ¶ 6.)  The Step Stool was manufactured on September 3, 2000.  (SUF ¶ 11.)  The Plaintiff weighed approximately 250 pounds on the day of the accident.  (SUF ¶ 8.)

Plaintiff's expert, Robert D. Bartlett, admits that it is most likely that the Step Stool's step wore out as a result of at least five to ten years of use in the Stein Mart store.  (SUF ¶¶ 10-12.)

2

Plaintiff's expert identified no design, manufacturing, or warranty defect in the Step Stool.  (SUF

¶ 15.)  He claims only that the Step Stool's warnings were inadequate in that Dorel should have

provided a warning that the Step Stool had a useful life (i.e., would wear out) and should be

inspected prior to use to determine whether it had reached the end of its useful life.  (SUF ¶ 16.)

## ARGUMENT

Dorel is entitled to summary judgment if "there is no genuine dispute as to any material

fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (2010).

"A fact is material if it 'might affect the outcome of the suit under the governing law'" and in

order to defeat a motion for summary judgment, "the opponent must do more than simply show

that there is some metaphysical doubt as to the material facts."  *Bartucci v. Jackson*, Civ. Action

No. 04-2977, 2006 WL 2631925, at *4 (E.D. La. Sept. 13, 2006) (citing *Anderson v. Liberty*

*Lobby, Inc*. 477 U.S. 242, 248 (1986) and *Matsushita Electric Indus. Co. v. Zenith Radio Corp*.,

475 U.S. 574, 586 (1986)).

**I.      Dorel is Entitled to Summary Judgment Because Commercial Use by a Person Over 200 lbs. Was Not a Reasonably Anticipated Use of the Step Stool.**

The exclusive source of recovery for a product liability claim in Louisiana is the LPLA.

*Kampen v. American Isuzu Motors, Inc.,* 157 F.3d 306, 309 (5th Cir. 1998) (en banc).  In order to

recover under the LPLA, a plaintiff must show that "(1) his damages were proximately caused by

a characteristic of the product that renders it unreasonably dangerous, and (2) his damages arose

from a reasonably anticipated use of the product."  *Id.* at 309; *see also* LA. REV. STAT. ANN. §

9.2800.54.   "If a plaintiff's damages did not arise from a reasonably anticipated use of the

product, then the 'unreasonably dangerous' question need not be reached."  *Id*.

Accordingly, Plaintiff's use of the Step Stool in complete disregard for its express

warnings precludes her recovery in this case.  Per the LPLA, "reasonably anticipated use" means

"a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." LA. REV. STAT. ANN. § 9.2800.53(7). "[W]hen a plaintiff misuses a product, in direct contravention of a warning, his 'use' will not be reasonably anticipated unless the plaintiff can show that the manufacturer should have known that product users 'were using the product in contravention of certain warnings.'" *Kampen,* 157 F.3d at 317; *Carter v. Louisville Ladder Group,* No. Civ.A. 3:04-CV1324, 2005 WL 3088613, at *5 (W.D. La. Nov. 17, 2005) (same). As discussed above, Plaintiff used the Step Stool while weighing 250 pounds in a commercial setting despite the stool's express statements that it was designed for "light household use" by a person weighing "200 pounds" or less. (SUF ¶¶ 5-9.) Plaintiff herself ***admitted*** that she should not have used the Step Stool because she weighed over 200 pounds at the time of the accident. (SUF ¶ 9.) Therefore, Plaintiff's use was not reasonably anticipated and she is clearly precluded from recovery in this case.

The case law supports this result. For example, in *Kampen v. American Isuzu Motors*, the Fifth Circuit affirmed a grant of summary judgment in favor of a manufacturer defendant on all of plaintiff's claims under the LPLA because the plaintiff's use of the subject product was not reasonably anticipated. *Kampen,* 157 F.3d at 318. The *Kampen* plaintiff sued the manufacturer of a car jack for injuries he sustained when the car jack broke, causing the car to fall on the plaintiff and injure him. *Id*. at 308-309. The defendant manufacturer moved for summary judgment on the grounds that plaintiff's use of the jack was not reasonably anticipated because the instructions in the car's owner's manual warned not to slide under the car while the jack was holding it up. *Id*. at 309, 318. The Court found that the plaintiff presented no evidence to show that such a use was reasonable in light of the express warnings to the contrary and therefore granted summary judgment in the defendant's favor. *Id*. at 318.

The Court's decision in *Carter v. Louisville Ladder Group*, likewise supports granting summary judgment. 2005 WL 3088613, at *7. In *Carter*, the plaintiff similarly "acted in direct contravention of each of [the ladder's] warnings." *Id*. at *6. The ladder's labeling instructed users how to properly set up the ladder and provided a weight limitation. *Id*. Not only did the plaintiff not read the warnings, but he set the ladder up contrary to the written instructions and was clearly over the stated weight limit. *Id*. In light of these facts, the Court held that there was "no issue of material fact as to whether [the plaintiff] put the ladder to a reasonably anticipated use" and accordingly granted summary judgment to the defendant *Id*. at *7.

Other courts applying Louisiana law have reached similar conclusions. *See e.g*, *Broussard v. Procter & Gamble Co*., 463 F. Supp. 2d 596, 608 (W.D. La. 2006) (granting summary judgment in favor of defendant manufacturer on all of plaintiffs' LPLA claims because the plaintiff "acted in direct contravention of each of the warnings, instructions and precautions, and as predicted, the failure to follow the recommended uses and precautions resulted in injury . . . [B]y disregarding the express warnings and instructions, [the plaintiff's] actions increased the risk of injury associated with the product and moved her use outside the realm of reasonably anticipated."); *Ortolano v. BDI Marketing*, 930 So. 2d 192, 196 (La. Ct. App. 2006) (affirming trial court's entry of summary judgment on all of plaintiff's claims under the LPLA because the plaintiff disregarded the manufacturer's instructions by taking more than twice the recommended dosage of asthma medicine); *Butz v. Lynch*, 762 So. 2d 1214, 1218 (La. Ct. App. 2000) (affirming trial court's entry of summary judgment in favor of defendant manufacturer on all of plaintiff's LPLA claims because the plaintiff's use of the product "contrary to the warnings on the product . . . does not constitute a reasonable use").

Furthermore, the LPLA and the cases interpreting it make clear that reasonably anticipated use is to be evaluated from the perspective of the manufacturer at the time of manufacture. LA. REV. STAT. ANN. § 9.2800.53(7); *Butz,* 762 So. 2d at 1217–18. As demonstrated by the warnings on the Step Stool, Dorel reasonably anticipated — and instructed — that the Step Stool should be used for light household use by a person weighing less than 200 pounds. (SUF ¶ 6.) By contrast, there is no evidence that Plaintiff's contrary use of the Step Stool should reasonably have been anticipated by Dorel.

The bottom line is that "the LPLA requires a link between *damages* and *reasonably anticipated use*." *Kampen,* 157 F.3d at 316 (emphases in original). "The flip side of that requirement is that if damages are linked to a product misuse (i.e., one that is not reasonably anticipated), then those damages are not recoverable under the Act." *Id*. The evidence here shows that Plaintiff's use of the Step Stool was not reasonably anticipated and her damages are not linked to a reasonably anticipated use. Thus, this Court should grant summary judgment on all of Plaintiff's claims.

## II.   Dorel is Entitled to Summary Judgment Because Plaintiff Has No Evidence to Support Her Claims of Defect.

Even if the Court were to reach the question of whether the Step Stool was unreasonably dangerous, Plaintiff has provided no triable evidence that it was. Under the LPLA, a product is unreasonably dangerous if it has a (1) defect in construction or composition, (2) defect in design, (3) a defect in a product warning, or (4) a defect due to nonconformance with an express warranty, as defined by the statute. LA. REV. STAT. ANN. § 2800.54(B). Plaintiff has the burden of proving the existence of any such defect. LA. REV. STAT. ANN. § 2800.54(D). As Plaintiff has presented no evidence sufficient to create an issue of material fact as to the existence of

unreasonable danger on any of these theories, summary judgment is independently proper on this ground as well.

### A. Plaintiff Has Produced No Evidence of a Manufacturing Defect, Design Defect or a Defect Due to Nonconformance with an Express Warranty.

Under the LPLA, a product is defective in construction "if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." LA. REV. STAT. ANN. § 9:2800.55. A product is defective for nonconformance with an express warranty "if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue." LA. REV. STAT. ANN. § 2800.58. Finally, to prove that a product is defective in design, a plaintiff must show that an alternative design exists, that it would have prevented his injuries, and that the use of the design would not unduly burden the manufacturer or hinder the utility of the product. LA. REV. STAT. ANN. § 2800.56.

These three theories were pled in conclusory fashion in Plaintiff's original Petition and Plaintiff has not come forward with any evidence to support them. Specifically, Plaintiff has produced no evidence supporting the notion that the Step Stool deviated in any way from Dorel's specifications, that Dorel made any untrue statement that induced her to use the stool, or that an alternative design existed when this stool was manufactured that would have prevented Plaintiff's injuries. In her deposition, Plaintiff conceded that she could not say that the stool was defective in design and only suggested that "there was some fault to [the stool]" but that she was "not sure" what that was. (SUF ¶¶ 13-14.) Plaintiff's expert report did not provide any opinion

or cite any facts supporting a theory of a design defect, manufacturing defect or an untrue express warranty.  (SUF ¶ 15.)

Furthermore, the evidence that has been presented suggests only that the Step Stool in fact *was* properly designed and manufactured.  Plaintiff's expert admits that the Step Stool simply wore out after five to ten years of use at the store, as all products inevitably do over time.  (SUF ¶¶ 10, 12.)  Because Plaintiff has failed to present any evidence to support the elements of these claims, summary judgment on them is appropriate.  *See, e.g., Ortolano*, 930 So. 2d at 195–196; *Smith v. General Motors Corp.*, 722 So. 2d 348, 353 (La. Ct. App. 1998) (upholding the trial court's grant of defendant's motion for summary judgment on manufacturing and design defect claims because plaintiff produced no evidence of an alternative design and no evidence of any defect in construction or composition).

**B.      There is No Genuine Issue of Material Fact Regarding Plaintiff's Inadequate Warning Claim.**

The only theory that Plaintiff attempts to support is her inadequate warning claim.  Under the LPLA, a product is defective due to inadequate warnings "if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its dangers to users and handlers of the product."  LA. REV. STAT. ANN. § 2800.57(A).  In addition to showing a defect due to inadequate warnings, a plaintiff must show that defect proximately caused her damage.  LA. REV. STAT. ANN. § 2800.54.  Although Plaintiff admitted that she did not read the warnings that *were* provided on the Step Stool, Plaintiff's expert nonetheless contends that, had Dorel included a warning that the Step Stool would wear out and should be inspected prior to any use, Ms. Peart would have read that warning, inspected the rivet wear on the stool, decided the stool should not be used and her accident would not have

occurred.  (SUF ¶ 16.)   This threadbare speculation is belied by the facts and insufficient to create an issue of material fact.

First, because Plaintiff did not read the warnings that were on the Step Stool at the time of the incident, there is no evidence that she would have read additional warnings instead.  In Louisiana, evidence of a products liability plaintiff's failure to read and heed existing warnings is determinative on this issue.  *See Ortolano,* 930 So. 2d at 194, 196 (affirming trial court's entry of summary judgment in favor of defendant drug manufacturer on plaintiff's inadequate warning claims because "[the plaintiff] admitted in his deposition that he did not read the entire label, therefore, the trial court found that he would not have been aware of a 'sufficient' warning, even if one had existed"); *see also Scordill v. Louisville Ladder Group,* No. Civ.A. 02-2565, 2004 WL 1118302, at *3 (E.D. La. May 18, 2004) (noting that plaintiff "admitted that he did not read the instructions and warnings on the ladder.  Thus, plaintiffs' [sic] argument that he would not have purchased the ladder if it had contained a warning that warned that the ladder was not designed for use by welders falls flat."); *Singleton v. Olin Mathieson Chem. Corp*., 131 So. 2d 329, 334 (La. Ct. App. 1961) (upholding judgment in favor of defendant manufacturer on inadequate warning claim on the grounds "plaintiff admittedly did not read the warning.  Therefore, the fact that the warning did not state that injury would occur is irrelevant.  The law does not require that one undertake to do a vain and useless thing, but only to do that which is reasonable under the circumstances.  Hence, in view of the fact that plaintiff did not read the warning, [plaintiff's suggested warning] would have been of no avail.");

Plaintiff has provided no evidence that an additional warning would have alerted Plaintiff to the rivet failure that occurred in this case.  Indeed, it is obvious to everyone that products eventually wear out, and unclear why a warning to that effect would be at all helpful, particularly

9

if it asked a layperson to appreciate the finer points of rivet engagement. Louisiana law does not require a manufacturer warn against all conceivable misuses of its products. *Butz,* 762 So.2d at 1217–18.

Because there is no evidence from which a reasonable jury could conclude that an inadequate warning caused Plaintiff's injuries, summary judgment in Dorel's favor is appropriate on Plaintiff's inadequate warning claims as well.

## CONCLUSION

"One of the central purposes of the motion for summary judgment in the federal system is as a device for . . . a swift end to meritless litigation." *Bartucci*, 2006 WL 2631925, at \*4.

Here, Ms. Peart has presented no evidence that her use of the Step Stool was reasonably anticipated or that a defect in the Step Stool caused her injuries. To the contrary, the evidence shows that Plaintiff's misuse of the Step Stool, contrary to the stool's express warnings, was not reasonably anticipated and that any injuries Plaintiff sustained were not due to a defect in the Step Stool. No reasonable jury could find a defect arising from reasonably anticipated use on these facts.

Accordingly, there is no issue of material fact for a jury to decide and Dorel should be granted judgment as a matter of law.

Dated:  March 1, 2011                              Respectfully submitted,


By:   /s/ Patrick J. Briney
          Patrick J. Briney
          BRINEY FORET CORRY
          413 Travis Street, Suite 200
          Lafayette, LA 70503
          (337) 237-4070
          (337) 233-8719 (fax)


          Jonathan Judge (pro hac vice)
          Ann H. MacDonald (pro hac vice)
          SCHIFF HARDIN LLP
          233 S. Wacker Drive, Suite 6600
          Chicago, IL 60606
          (312) 258-5500 (phone)
          (312) 258-5700 (fax)


          Attorneys for Defendant Dorel
          Juvenile Group, Inc.

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on March 1, 2011 he caused a true and correct copy of **Memorandum in Support of Defendant Dorel Juvenile Group's Inc.'s Motion for Summary Judgment** to be filed electronically with the Court's CM/ECF system, which caused an electronic copy of this filing to be served on counsel of record.

　　　　　　　　　　　　　　　　　　　　　　/s/ Patrick J. Briney____